Case 0:23-cr-60010-RS  Document 1  Entered on FLSD Docket 01/13/2023  Page 1 of 19

FILED by \_\_MM\_\_ D.C.

Jan 12, 2023

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. **23-60010-CR-SMITH/VALLE**

18 U.S.C. § 1349
18 U.S.C. § 1343
18 U.S.C. § 2
18 U.S.C. § 982(a)(1)

UNITED STATES OF AMERICA

vs.

LUDNIE JEAN,
SERGE JEAN,
SIMON ITAMAN,
ANNA ITAMAN,
RHOMY LOUIS, and
NADEGE AUGUSTE,

    Defendants.
_____/

# INDICTMENT

The Grand Jury charges that:

## GENERAL ALLEGATIONS

At all times relevant to this Indictment:

### Requirements to Become a Registered Nurse or Licensed Practical Nurse

1. The purpose of a professional nursing license was to protect the public from harm by setting minimal qualifications and competencies for safe entry-level practitioners. Nursing was regulated because it was one of the health professions that poses a risk of harm to the public if practiced by someone who was unprepared and/or incompetent. Boards of Nursing achieved this mission by establishing the standards for safe nursing care and issuing licenses to practice nursing.

2. According to the National Council of State Boards of Nursing, components of licensure to be a Registered Nurse (RN) or a Licensed Practical/Vocational Nurse (LPN/VN)

included verification of graduation from an approved pre-licensure nursing program, verification of successful completion of the National Council Licensure Examination (NCLEX) also known as "the board exam" or "the boards," and in some states a criminal background check.

3. The Nurse Licensure Compact increased access to care while maintaining public protection at the state level. Under the Nurse Licensure Compact, nurses can practice in other Nurse Licensure Compact states, without having to obtain additional licenses. Approximately 39 states, including Florida and Texas, have enacted Nurse Licensure Compact legislation. The Nurse Licensure Compact required that every RN or LPN/VN graduate from a board-approved RN or LPN/VN prelicensure education program. Each state's nursing board governed the approval of nursing education programs.

4. The State of Florida enacted the Nurse Practice Act to ensure that every nurse practicing in Florida meets minimum requirements for safe practice. Fla. Stat. §§ 464.001-464.027. The Florida Board of Nursing was both a regulatory board and a state government agency legally responsible for enforcing the state's Nurse Practice Act. The Florida Board of Nursing was responsible for establishing standards for safe nursing care and issuing licenses to practice nursing. To do so, it oversaw education requirements and rules for licensure in Florida. Among these requirements was that any person desiring to be licensed as an RN or LPN/VN had to complete the requirements for graduation from an approved nursing program, or its equivalent as determined by the board, for the preparation of registered nurses or licensed practical nurses, whichever was applicable. For graduates of an approved program or equivalent, an applicant seeking certification to take the licensure examination had to submit an official transcript or equivalent documentation which identified all courses completed that met graduation requirements.

5. According to Florida's Nurse Practice Act, an approved pre-licensure program's curriculum has to consist of:

   a. For a practical nursing education program, at least fifty percent clinical training.

   b. A practical nursing education program curriculum plan must document clinical experience and theoretical instruction in medical, surgical, obstetric, pediatric, and geriatric nursing. The curriculum plan must document clinical training experience in appropriate settings that include, but are not limited to, acute care, long-term care, and community settings.

   c. A practical nursing education program that provides theoretical instruction and clinical application in personal, family, and community health concepts; nutrition; human growth and development throughout the life span; body structure and function; interpersonal relationship skills; mental health concepts; pharmacology and administration of medications; and legal aspects of practice.

6. The Texas Board of Nursing aimed to protect and promote the welfare of its citizens by ensuring that each person holding a license as a nurse in its state was competent to practice safely. The Board fulfilled its mission through the regulation of the practice of nursing and the approval of nursing educational programs. Chapter 301 of the Texas Occupations Code contains the Nursing Practice Act which created the Board of Nursing and defined its responsibility for regulating nursing education, licensure, and practice. The Texas Board of Nursing required that for a person to be certified as a graduate of any school of nursing or educational program, that person must have completed the requirements of the prescribed course of study, including clinical practice, of a school of nursing or educational program that (1) was approved by the board; (2) was accredited by a national nursing accreditation agency determined by the board to have

acceptable standards; or (3) was approved by a state board of nursing of another state and the board.

**Defendants and Related Individuals and Entities**

7. Sacred Heart International Institute Inc. (Sacred Heart) was a Florida corporation located at 3601 W Commercial Boulevard, Suite 16, Fort Lauderdale, Florida. Sacred Heart was licensed by the Florida Board of Nursing as a nursing education program on or about May 13, 2014. According to Sacred Heart's website, it offered a Practical Nursing Program and "the objective of this program is to prepare students for employment as a practical nurse."

8. Nursing Bridges Incorporated (Nursing Bridges) was a Texas company and its listed business address was 14421-14425 Cornerstone Village Drive, Houston, Texas. According to Nursing Bridge's website, its mission was "to educate and inspire the next generation of healthcare professionals."

9. United Hearts Consultants was a Florida company with a listed business address in Broward County, Florida, that operated as a New York business partnership at 96-09 Springfield Boulevard, Queens Village, New York.

10. Jean's NCLEX Review LLC (Jean's NCLEX) was a Texas company, and its listed business address was 16103 W. Little York, Suite C, Houston, Texas.

11. Defendant **SIMON ITAMAN**, a resident of Harris County, Texas, owned and operated Nursing Bridges.

12. Defendant **ANNA ITAMAN**, a resident of Harris County, Texas, and **SIMON ITAMAN**'s wife, also owned and operated Nursing Bridges.

13. Defendant **RHOMY LOUIS**, a resident of Suffolk County, New York, owned and operated United Hearts Consultants. **LOUIS** also worked with **SIMON ITAMAN** and **ANNA**

4

**ITAMAN** at Nursing Bridges.

14. Defendant **NADEGE AUGUSTE**, a resident of Broward County, Florida, operated United Hearts Consultants.

15. Defendant **LUDNIE JEAN**, a resident of Harris County, Texas, owned and operated Jean's NCLEX. Prior to owning and operating Jean's NCLEX, **LUDNIE JEAN** was employed by **SIMON ITAMAN** and **ANNA ITAMAN** at Nursing Bridges.

16. Defendant **SERGE JEAN**, a resident of Harris County, Texas, and **LUDNIE JEAN**'s husband, also owned and operated Jean's NCLEX.

17. Co-conspirator 1, a resident of Palm Beach County, Florida, owned and operated Sacred Heart.

18. Co-conspirator 2 obtained a diploma and transcript issued January 31, 2019, by Sacred Heart purporting to show that he/she attended Sacred Heart and completed the necessary courses and/or clinicals to obtain a Licensed Practical Nursing diploma.

19. Co-conspirator 3 obtained a diploma and transcript issued January 31, 2020, by Sacred Heart purporting to show that he/she attended Sacred Heart and completed the necessary courses and/or clinicals to obtain a Licensed Practical Nursing diploma.

20. Co-conspirator 4 obtained a diploma and transcript issued October 31, 2020, by Sacred Heart purporting to show that he/she attended Sacred Heart and completed the necessary courses and/or clinicals to obtain a Licensed Practical Nursing diploma.

21. Health Care Provider-1 (HCP-1) was a skilled nursing care facility located in Texas that employed licensed nurses to care for elderly patients.

22. Health Care Provider-2 (HCP-2) was a skilled nursing care facility located in Texas that employed licensed nurses to care for elderly patients.

23. Health Care Provider-3 (HCP-3) was a home health facility located in Texas that employed licensed nurses to care for homebound patients.

## COUNT 1
### Conspiracy to Commit Wire Fraud
### (18 U.S.C. § 1349)

1. The General Allegations section of this Indictment is re-alleged and incorporated by reference as if fully set forth herein.

2. From at least as early as in or around January of 2017, and continuing through in or around November of 2022, in Broward and Palm Beach Counties, in the Southern District of Florida, and elsewhere, the defendants,

**LUDNIE JEAN,**
**SERGE JEAN,**
**SIMON ITAMAN,**
**ANNA ITAMAN,**
**RHOMY LOUIS, and**
**NADEGE AUGUSTE,**

did willfully, that is, with the intent to further the object of the conspiracy, and knowingly combine, conspire, confederate, and agree with each other, and with Co-conspirators 1-4, and others known and unknown to the Grand Jury, to commit wire fraud, that is, to knowingly and with the intent to defraud, devise and intend to devise a scheme and artifice to defraud and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing the pretenses, representations, and promises were false and fraudulent when made, and for the purpose of executing the scheme and artifice, did knowingly transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce, certain writings, signs, signals, pictures and sounds, in violation of Title 18, United States Code, Section 1343.

### Purpose of the Conspiracy

3. It was the purpose of the conspiracy for the defendants and their co-conspirators

to unlawfully enrich themselves by, among other things: (a) soliciting and recruiting co-conspirators, via interstate wire communications, seeking nursing credentials to obtain employment as an LPN/VN in the health care field; (b) creating and distributing, via interstate wire communications, false and fraudulent diplomas and transcripts for co-conspirators seeking LPN/VN licensure and employment in the health care field; (c) using the false and fraudulent documents to obtain employment, pay, and other benefits in the health care field; (d) concealing the use of fraudulent documents used to obtain employment in the health care field; and (e) using the proceeds of the conspiracy for their personal use and benefit, and the use and benefit of others, and to further the conspiracy.

### Manner and Means of the Conspiracy

The manner and means by which the defendants and their co-conspirators sought to accomplish the object and purpose of the conspiracy included, among others, the following:

4. **LUDNIE JEAN, SERGE JEAN, SIMON ITAMAN, ANNA ITAMAN, RHOMY LOUIS, NADEGE AUGUSTE,** and others, via interstate wire communications, solicited and recruited co-conspirators, including Co-conspirators 2-4, and others, seeking nursing credentials and employment as an LPN/VN in the health care field.

5. **LUDNIE JEAN, SERGE JEAN, SIMON ITAMAN, ANNA ITAMAN, RHOMY LOUIS,** and **NADEGE AUGUSTE,** together with Co-conspirator 1 and others, sent and caused others to send, via interstate wire communications, information used to create false and fraudulent official transcripts and diplomas from Sacred Heart.

6. **LUDNIE JEAN, SERGE JEAN, SIMON ITAMAN, ANNA ITAMAN, RHOMY LOUIS,** and **NADEGE AUGUSTE,** together with Co-conspirator 1 and others, created and distributed, via interstate wire communications, false and fraudulent transcripts and

diplomas to co-conspirators, including Co-conspirators 2-4, and others, falsely and fraudulently representing that the co-conspirators attended Sacred Heart in Florida and completed the necessary courses and/or clinicals to obtain LPN/VN diplomas, when in fact the co-conspirators had never actually completed the necessary courses and/or clinicals.

7. In furtherance of the conspiracy, co-conspirators including Co-conspirators 2-4, and others, used the false and fraudulent diplomas and transcripts and other records created and distributed by **LUDNIE JEAN, SERGE JEAN, SIMON ITAMAN, ANNA ITAMAN, RHOMY LOUIS, NADEGE AUGUSTE,** to obtain licensure as an LPN/VN in various states, including Texas.

8. Co-conspirators, including Co-conspirators 2-4, and others, used the false and fraudulent diplomas, transcripts and other documents created and distributed by **LUDNIE JEAN, SERGE JEAN, SIMON ITAMAN, ANNA ITAMAN, RHOMY LOUIS, NADEGE AUGUSTE,** Co-conspirator 1, and others, to fraudulently obtain employment and benefits as an LPN/VN at various unwitting health care providers throughout the country, including at HCP-1, HCP-2, and HCP-3. Those health care providers hired and paid salaries, wages, and other benefits to the LPN/VNs based on their fraudulent credentials.

9. **LUDNIE JEAN, SERGE JEAN, SIMON ITAMAN, ANNA ITAMAN, RHOMY LOUIS, NADEGE AUGUSTE,** together with Co-conspirators 1-4 and others, used the proceeds of the conspiracy for their personal use and benefit, and to further the conspiracy.

All in violation of Title 18, United States Code, Section 1349.

**COUNTS 2-9**
**Wire Fraud**
**(18 U.S.C. § 1343)**

1. The General Allegations section of this Indictment is realleged and incorporated

by reference as if fully set forth herein.

2. From at least as early as in or around January of 2017, and continuing through in or around November of 2022, in Broward and Palm Beach Counties, in the Southern District of Florida, and elsewhere, the defendants,

**LUDNIE JEAN,**
**SERGE JEAN,**
**SIMON ITAMAN,**
**ANNA ITAMAN,**
**RHOMY LOUIS, and**
**NADEGE AUGUSTE,**

did knowingly, and with the intent to defraud, devise and intend to devise a scheme and artifice to defraud and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing the pretenses, representations, and promises were false and fraudulent when made, and for the purpose of executing the scheme and artifice, did knowingly transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce, certain writings, signs, signals, pictures and sounds, in violation of Title 18, United States Code, Section 1343.

### Purpose of the Scheme and Artifice

3. It was a purpose of the scheme and artifice for the defendants and their accomplices to unlawfully enrich themselves by, among other things: (a) soliciting and recruiting accomplices, via interstate wire communications, seeking nursing credentials to obtain employment as an LPN/VN in the health care field; (b) creating and distributing, via interstate wire communications, false and fraudulent diplomas and transcripts for accomplices seeking LPN/VN licensure and employment in the health care field; (c) using the false and fraudulent documents to obtain employment, pay, and other benefits in the health care field; (d) concealing the use of fraudulent documents used to obtain employment in the health care field; and (e) using

the proceeds of the fraud or their personal use and benefit, and the use and benefit of others, and to further the fraud.

## The Scheme and Artifice

4. Paragraphs 4 through 9 of the Manner and Means section of Count 1 of this Indictment are re-alleged and incorporated by reference as though fully set forth herein as a description of the scheme and artifice.

## Use of the Wires

5. On or about the dates set forth below, in the Southern District of Florida, and elsewhere, the defendants, as specified below, for the purposes of executing the above-described scheme and artifice to defraud, did knowingly transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce, certain writings, signs, signals, pictures and sounds as described below:

| Count | Defendant(s) | Approx. Date | Description of Wire Transmission |
|---|---|---|---|
| 2 | SIMON ITAMAN and ANNA ITAMAN | 02/08/2019 | Email from Co-Conspirator 1 to **SIMON ITAMAN** and **ANNA ITAMAN** in which he/she provided nursing licensure instructions for their students who never attended Sacred Heart |
| 3 | SIMON ITAMAN and ANNA ITAMAN | 03/04/2019 | Email sent from **ANNA ITAMAN** to Co-conspirator 1 and **SIMON ITAMAN** listing names and grades of accomplice nursing applicants seeking to obtain Sacred Heart diplomas and transcripts |
| 4 | SIMON ITAMAN and ANNA ITAMAN | 04/18/2019 | Bank of America wire payment in the amount of $9,696, from **SIMON ITAMAN** to Co-Conspirator 1 for Sacred Heart diplomas and transcripts |

10

| Count | Defendant(s) | Approx. Date | Description of Wire Transmission |
|---|---|---|---|
| 5 | RHOMY LOUIS and NADEGE AUGUSTE | 10/17/2019 | Email sent from Co-conspirator 1 to RHOMY LOUIS verifying the submission of accomplice nursing applicants to the Florida Board of Nursing as Sacred Heart graduates |
| 6 | LUDNIE JEAN and SERGE JEAN | 05/14/2020 | Email sent from Co-conspirator 1 to LUDNIE JEAN and SERGE JEAN with the subject line "LPN Graduate list" that contained an attachment consisting of student names whom Co-Conspirator 1 processed for LUDNIE JEAN and SERGE JEAN through the Florida Board of Nursing |
| 7 | LUDNIE JEAN and SERGE JEAN | 10/29/2020 | Email sent from LUDNIE JEAN to Co-conspirator 1 containing names and identifying information of nursing applicants seeking to obtain Sacred Heart diplomas and transcripts |
| 8 | LUDNIE JEAN and SERGE JEAN | 12/01/2020 | Email sent from Co-conspirator 1 to LUDNIE and SERGE JEAN with the subject line "New Graduates list" that contained an attachment consisting of student names whom Co-Conspirator 1 processed for LUDNIE JEAN and SERGE JEAN through the Florida Board of Nursing |
| 9 | LUDNIE JEAN and SERGE JEAN | 01/21/2021 | Text message from LUDNIE JEAN to Co-Conspirator 1 stating "Please don't forget to bring the stamps for official transcripts and diplomas." |

In violation of Title 18, United States Code, Sections 1343 and 2.

## FORFEITURE
## (18 U.S.C. § 981(a)(1)(C))

1. The allegations contained in this Indictment are hereby re-alleged and by this reference fully incorporated herein for the purpose of alleging forfeiture to the United States of certain property in which any of the defendants, **LUDNIE JEAN, SERGE JEAN, SIMON ITAMAN, ANNA ITAMAN, RHOMY LOUIS,** and **NADEGE AUGUSTE,** has an interest.

2. Upon conviction of a violation, or conspiracy to commit a violation, of Title 18, United States Code, Section 1343, as alleged in this Indictment, the defendant shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds

traceable to such offense, pursuant to Title 18, United States Code, Section 981(a)(1)(C).

All pursuant to Title 18, United States Code, Section 981(a)(1)(C); and the procedures set forth at Title 21, United States Code, Section 853, as made applicable by Title 28, United States Code, Section 2461(c) and Title 18, United States Code, Section 982(b)(1).

A TRUE BILL

_____
FOREPERSON

_____
MARKENZY LAPOINTE
UNITED STATES ATTORNEY

_____
CHRISTOPHER J. CLARK
ASSISTANT UNITED STATES ATTORNEY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA

v.

LUDNIE JEAN, et al.,

_____/
Defendant.

CASE NO.:

**CERTIFICATE OF TRIAL ATTORNEY***

**Superseding Case Information:**

New Defendant(s) (Yes or No) _____
Number of New Defendants _____
Total number of New Counts _____

**Court Division** (select one)
☐ Miami   ☐ Key West   ☐ FTP
☑ FTL     ☐ WPB

I do hereby certify that:

1. I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. §3161.

3. Interpreter: (Yes or No) No
   List language and/or dialect: _____

4. This case will take __8__ days for the parties to try.

5. Please check appropriate category and type of offense listed below:
   (Check only one)                (Check only one)
   I    ☐ 0 to 5 days              ☐ Petty
   II   ☑ 6 to 10 days             ☐ Minor
   III  ☐ 11 to 20 days            ☐ Misdemeanor
   IV   ☐ 21 to 60 days            ☑ Felony
   V    ☐ 61 days and over

6. Has this case been previously filed in this District Court? (Yes or No) No
   If yes, Judge _____ Case No. _____
7. Has a complaint been filed in this matter? (Yes or No) No
   If yes, Magistrate Case No. _____
8. Does this case relate to a previously filed matter in this District Court? (Yes or No) Yes
   If yes, Judge Dimitrouleas   Case No. 21-CR-60198
9. Defendant(s) in federal custody as of _____
10. Defendant(s) in state custody as of _____
11. Rule 20 from the _____ District of _____
12. Is this a potential death penalty case? (Yes or No) No
13. Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek Maynard? (Yes or No) No
14. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to October 3, 2019 (Mag. Judge Jared Strauss? (Yes or No) No

By: _____
Christopher J. Clark
Assistant United States Attorney
FLA Bar No.    588040

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name:** LUDNIE JEAN

**Case No:** _____

Count #1:

Conspiracy to Commit Wire Fraud

Title 18, United States Code, Section 1349
* Max. Term of Imprisonment: Twenty (20) Years
* Mandatory Min. Term of Imprisonment (if applicable):
* Max. Supervised Release: 3 Years
* Max. Fine: $250,000 or twice the gross gain or loss for the offense

Counts #6-9:

Wire Fraud

Title 18, United States Code, Section 1343
* Max. Term of Imprisonment: Twenty (20) Years as to each count
* Mandatory Min. Term of Imprisonment (if applicable):
* Max. Supervised Release: 3 Years
* Max. Fine: $250,000 or twice the gross gain or loss for the offense

Counts #:

_____

* Max. Term of Imprisonment:
* Mandatory Min. Term of Imprisonment (if applicable):
* Max. Supervised Release:
* Max. Fine:

*Refers only to possible term of incarceration, supervised release and fines.  It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name**: SERGE JEAN

**Case No**: _____

Count #1:

Conspiracy to Commit Wire Fraud

Title 18, United States Code, Section 1349
* Max. Term of Imprisonment: Twenty (20) Years
* Mandatory Min. Term of Imprisonment (if applicable):
* Max. Supervised Release: 3 Years
* Max. Fine: $250,000 or twice the gross gain or loss for the offense

Counts #6-9:

Wire Fraud

Title 18, United States Code, Section 1343
* Max. Term of Imprisonment: Twenty (20) Years as to each count
* Mandatory Min. Term of Imprisonment (if applicable):
* Max. Supervised Release: 3 Years
* Max. Fine: $250,000 or twice the gross gain or loss for the offense

Count #:

_____

* Max. Term of Imprisonment:
* Mandatory Min. Term of Imprisonment (if applicable):
* Max. Supervised Release:
* Max. Fine:

*Refers only to possible term of incarceration, supervised release and fines. It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

Defendant's Name: __SIMON ITAMAN__

Case No: _____

Count #1:

Conspiracy to Commit Wire Fraud

Title 18, United States Code, Section 1349
* Max. Term of Imprisonment: Twenty (20) Years
* Mandatory Min. Term of Imprisonment (if applicable):
* Max. Supervised Release: 3 Years
* Max. Fine: $250,000 or twice the gross gain or loss for the offense

Counts #2-4:

Wire Fraud

Title 18, United States Code, Section 1343
* Max. Term of Imprisonment: Twenty (20) Years as to each count
* Mandatory Min. Term of Imprisonment (if applicable):
* Max. Supervised Release: 3 Years
* Max. Fine: $250,000 or twice the gross gain or loss for the offense

Count #:

_____

* Max. Term of Imprisonment:
* Mandatory Min. Term of Imprisonment (if applicable):
* Max. Supervised Release:
* Max. Fine:

*Refers only to possible term of incarceration, supervised release and fines. It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

Defendant's Name: ANNA ITAMAN

Case No: _____

Count #1:

Conspiracy to Commit Wire Fraud

Title 18, United States Code, Section 1349
* Max. Term of Imprisonment: Twenty (20) Years
* Mandatory Min. Term of Imprisonment (if applicable):
* Max. Supervised Release: 3 Years
* Max. Fine: $250,000 or twice the gross or loss for the offense

Counts #2-4:

Wire Fraud

Title 18, United States Code, Section 1343
* Max. Term of Imprisonment: Twenty (20) Years as to each count
* Mandatory Min. Term of Imprisonment (if applicable):
* Max. Supervised Release: 3 Years
* Max. Fine: $250,000 or twice the gross or loss for the offense

Count #:

_____

* Max. Term of Imprisonment:
* Mandatory Min. Term of Imprisonment (if applicable):
* Max. Supervised Release:
* Max. Fine:

*Refers only to possible term of incarceration, supervised release and fines. It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name**: RHOMY LOUIS

**Case No**: _____

Count #1:

Conspiracy to Commit Wire Fraud

Title 18, United States Code, Section 1349
* Max. Term of Imprisonment: Twenty (20) Years
* Mandatory Min. Term of Imprisonment (if applicable):
* Max. Supervised Release: 3 Years
* Max. Fine: $250,000 or twice the gross gain or loss for the offense

Count #5:

Wire Fraud

Title 18, United States Code, Section 1343
* Max. Term of Imprisonment: Twenty (20) Years as to each count
* Mandatory Min. Term of Imprisonment (if applicable):
* Max. Supervised Release: 3 Years
* Max. Fine: $250,000 or twice the gross gain or loss for the offense

Count #:

_____

* Max. Term of Imprisonment:
* Mandatory Min. Term of Imprisonment (if applicable):
* Max. Supervised Release:
* Max. Fine:

*Refers only to possible term of incarceration, supervised release and fines. It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name:** NADEGE AUGUSTE

**Case No:** _____

Count #1:

Conspiracy to Commit Wire Fraud

Title 18, United States Code, Section 1349
* Max. Term of Imprisonment: Twenty (20) Years
* Mandatory Min. Term of Imprisonment (if applicable):
* Max. Supervised Release: 3 Years
* Max. Fine: $250,000 or twice the gross gain or loss for the offense

Count #5:

Wire Fraud

Title 18, United States Code, Section 1343
* Max. Term of Imprisonment: Twenty (20) Years
* Mandatory Min. Term of Imprisonment (if applicable):
* Max. Supervised Release: 3 Years
* Max. Fine: $250,000 or twice the gross gain or loss for the offense

Count #:

* Max. Term of Imprisonment:
* Mandatory Min. Term of Imprisonment (if applicable):
* Max. Supervised Release:
* Max. Fine:

*Refers only to possible term of incarceration, supervised release and fines. It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.