UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-CR-60010-SMITH/VALLE

UNITED STATES OF AMERICA,

    Plaintiff,

v.

LUDNIE JEAN, SERGE JEAN,
SIMON ITAMAN, ANNA ITAMAN,
RHOMY LOUIS, and NADEGE AUGUSTE

    Defendants.
_____/

### REPORT AND RECOMMENDATION TO DISTRICT JUDGE

THIS CAUSE is before the Court on Defendant Nadege Auguste's Motion to Dismiss ("the Motion").[1] (ECF No. 58). U.S. District Judge Rodney Smith referred the Motion to the undersigned for a Report and Recommendation. (ECF No. 84). *See* 28 U.S.C. § 636(b); S.D. Fla. Mag. R. 1. Having reviewed the Motion, responses, replies, supplemental authorities, and being otherwise fully advised in the premises, the undersigned respectfully recommends that the Motion be **DENIED** for the reasons discussed below.

### I.    BACKGROUND

In January 2023, Defendants Ludnie Jean, Serge Jean, Simon Itaman, Anna Itaman, Rhomy Louis, and Nadege Auguste (collectively, "Defendants") were charged in a nine-count Indictment, alleging conspiracy to commit wire fraud (Count 1) and substantive wire fraud (Counts 2–9). *See*

---

[1] Relatedly, Defendants Ludnie and Serge Jean ("the Jeans") and Simon and Anna Itaman ("the Itamans") also filed motions to dismiss. (ECF Nos. 71, 82). During the pendency of the motions, however, a Notice of Change of Plea was entered on the docket as to the Jeans and the Itamans. (ECF Nos. 91, 98). The undersigned thus recommended that these motions be denied as moot. (ECF Nos. 92, 99). Defendant Rhomy Louis has not filed or adopted any of the Motions. Thus, only Defendant Auguste's Motion remains at issue. (ECF No. 104).

*generally* (ECF No. 1). According to the Indictment, Defendants owned and operated four nursing schools in New York, Texas, and Florida, from January 2017 through November 2022. *Id.* Defendants allegedly created false scholastic transcripts and diplomas for individuals who had not attended the nursing programs. *Id.* at 6–7. In particular, the Indictment lists three individuals, identified as co-conspirators 2 through 4, who purchased fraudulent Licensed Practical Nurse/Vocational Nurse ("LPN/VN") diplomas and school transcripts from Sacred Heart International Institute. *Id.* at 5. In addition, the Indictment lists three health care providers, identified as HCP 1 through 3, as the victims of Defendants' scheme to defraud. *Id.* at 5–6.

The Indictment further alleges that the Defendants and their co-conspirators sought to unlawfully enrich themselves by, among other things, using interstate wire communications to: "(a) solicit[] and recruit[] co-conspirators . . . seeking nursing credentials to obtain employment as an LPN/VN in the health care field; (b) creat[e] and distribut[e] . . . fraudulent diplomas and transcripts for co-conspirators seeking LPN/VN licensure and employment in the health care field; (c) us[e]the false and fraudulent documents to obtain employment, pay, and other benefits in the health care field; (d) conceal[] the use of fraudulent documents used to obtain employment in the healthcare field; and (e) us[e] the proceeds of the conspiracy for their personal use and benefit, and the use and benefit of others, and to further the conspiracy." *Id.* at 6, 7.

Defendant seeks dismissal of the Indictment, arguing that the Government has failed to state a wire fraud offense under 18 U.S.C. §§ 1349, 1343, and 2 because a nursing license in the hands of the state does not constitute "property" under the wire fraud statute.[2] *See generally* (ECF Nos. 58 at

---

[2] Defendant Auguste's Motion to Dismiss leaves much to the Court's imagination. For example, the five-page motion consists of block quotes of the relevant statutes, lengthy block quotes from *Cleveland v. United States*, 531 U.S. 12 (2000) and *Kelly v. United States*, 140 S. Ct. 1565 (2020), and one line of argument. *See generally* (ECF No. 58); *see also* (ECF Nos. 64, 67, 72, 74, 101, 102) (Defendant's supplemental authority raising piecemeal arguments not raised in the original motion). Arguments raised in such perfunctory manner may be deemed waived. *See U.S. Steel Corp. v. Astrue*, 495 F.3d 1272, 1287 n.13 (11th Cir. 2007) ("We will not address this perfunctory and

5, 71 at 2–6, 82 at 3–7). In response, the Government argues that Defendant misreads the Indictment in that the alleged victims of the fraud are private health care providers, not the state licensing boards. *See generally* (ECF Nos. 65 at 4, 75 at 4–8, 86 at 4–8). As discussed below, the undersigned is persuaded by the Government's argument at this motion to dismiss stage.

## II. STANDARD OF REVIEW

Under Federal Rule of Criminal Procedure 7(c)(1), an indictment must contain "a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). Thus, an indictment must: (i) present the essential elements of the charged offense; (ii) notify the defendant of the charges against him; and (iii) enable the defendant to rely upon a judgment under the indictment as a bar against double jeopardy for any subsequent prosecution for the same offense. *United States v. Chalker*, 966 F.3d 1177, 1190 (11th Cir. 2020). Moreover, "[t]he sufficiency of a criminal indictment is determined from its face." *United States v. Salman*, 378 F.3d 1266, 1268 (11th Cir. 2004) (quoting *United States v. Critzer*, 951 F.2d 306, 307 (11th Cir. 1992)). Thus, "a court may not dismiss an indictment . . . on a determination of facts that should have been developed at trial." *United States v. Torkington*, 812 F.2d 1347, 1354 (11th Cir. 1987). Lastly, "[w]hen considering a motion to dismiss an indictment, this Court must take the allegations set forth in the indictment as true and viewed in the light most favorable to the Government." *United States v. Lopez*, No. 23-CR-20186, 2023 WL 5089362, at *2 (S.D. Fla. Aug. 9, 2023).

## III. DISCUSSION

Defendant seeks to dismiss the Indictment on multiple grounds, all based on the overarching theme that the Indictment fails to present an essential element of the charged wire fraud offenses.

---

underdeveloped argument."). Nonetheless, the undersigned will consider the co-defendants' more expansive arguments and the corresponding Government responses in addressing Defendant's motion.

3

### A. The Indictment Sufficiently Alleges a Deprivation of Property

Citing to *Cleveland v. United States*, 531 U.S. 12 (2000) and *Kelly v. United States*, 140 S. Ct. 1565 (2020), Defendant argues that the state nursing licenses that the co-conspirators obtained as part of the alleged scheme do not constitute "money or property of the victims" under the wire fraud statute. (ECF Nos. 58 at 5–6, 82 at 7). More specifically, Defendant asserts that under *Cleveland*, state and municipal licenses do not qualify as "property" under 18 U.S.C. § 1341 (the analogous mail fraud statute) in the hands of the state licensors. (ECF Nos. 58 at 3–4, 75 at 4–5, 82 at 5); *see Cleveland*, 531 U.S. at 26 (concluding "that § 1341 requires that the object of the fraud be 'property' in the victim's hands, and that a . . . license in the State's hands is not 'property' under § 1341"). Defendant adds that *Kelly* expanded the holding in *Cleveland* by finding that deception in obtaining a license "'implicate[s] the Government's role as sovereign' wielding 'traditional police powers'" rather than its role "as a property holder." *Kelly*, 140 S. Ct. at 1572 (internal citations omitted) (ECF Nos. 58 at 4–5, 82 at 2). Defendant argues that the crux of the Government's alleged wire fraud is the submission of false scholastic credentials to state licensing boards to obtain nursing licenses, which is not at a cognizable wire fraud offense under *Cleveland* and *Kelly*. (ECF Nos. 58 at 4–5, 82 at 6–7).

Although Defendant is correct that a fraudulent statement to a state licensing board to obtain a state-issued license is not a cognizable "property" offense under § 1343, that is not what the Indictment alleges here. Rather, as the Government points out, the Indictment alleges that Defendants defrauded unwitting health care providers—not state licensing boards—of property (i.e, money in the form of salary and benefits). *See generally* (ECF No. 1) (Indictment). More specifically, the Indictment alleges that Defendants and their co-conspirators sought to unlawfully enrich themselves by using interstate wire communications to: "(a) solicit[] and recruit[] co-conspirators . . . seeking nursing credentials *to obtain employment* as an LPN/VN in the health care field; (b) create[e] and

4

distribut[e] . . . fraudulent diplomas and transcripts for co-conspirators *seeking LPN/VN licensure and employment* in the health care field; (c) us[e]the false and fraudulent documents *to obtain employment*, pay, and other benefits in the health care field; (d) conceal[] the use of fraudulent documents used *to obtain employment* in the healthcare field; and (e) us[e] the proceeds of the conspiracy for their personal use and benefit, and the use and benefit of others, and to further the conspiracy." *Id.* at 6, 7 (emphasis added).

Measured against these allegations in the Indictment, the undersigned finds that *Cleveland* and *Kelly* are not determinative at this motion to dismiss stage, where the undersigned must evaluate the sufficiency of the Indictment on its face. *Salman*, 378 F.3d at 1268. Indeed, when considering a motion to dismiss an indictment, the undersigned must accept the allegations in the Indictment as true and view them in the light most favorable to the Government. *Lopez*, 2023 WL 5089362, at *2. Furthermore, "a court may not dismiss an indictment . . . on a determination of facts that should have been developed at trial." *Torkington*, 812 F.2d at 1354. Here, the Indictment clearly alleges that Defendants participated in the fraud by providing fraudulent nursing school transcripts and diplomas to co-conspirators who had not earned them. The co-conspirators then submitted those fraudulent transcripts and diplomas to state boards to obtain licenses that they were not qualified to receive and would not otherwise have been issued. Importantly, the Indictment further alleges that the goal of the conspiracy was for the co-conspirators to be hired as nurses—the nursing licenses being merely a means to that end. Theoretically, the co-conspirators may have sought to get nursing diplomas, pass the boards, and obtain state-issued licenses for reasons of personal fulfillment—without intending to defraud anyone of property—and the Defendants simply sought to help them achieve that goal. Likewise, it is also theoretically possible that the health care providers were not induced to hire the co-conspirators based on the fraudulently obtained credentials. But this is the kind of factual dispute to be tested at trial and addressed in a motion for judgment of acquittal pursuant to Federal Rule of

5

Criminal Procedure 29. *See Salman*, 378 F.3d at 1268. Here, taking the Indictment on its face, the Government has adequately alleged that Defendants participated in a scheme to defraud health care providers of property (in the form of salary and benefits) based on the pretense that the co-conspirators were properly trained and licensed nurses.

### B. The Alleged Fraud Naturally Induced the Providers to Hire the Co-conspirators

Next, Defendant argues that the carefully-drafted allegations in the Indictment regarding the co-conspirators' goal of obtaining employment is merely an attempt by the Government to circumvent the holdings of *Cleveland* and *Kelly*. (ECF No. 67 at 2). To support this argument, Defendant relies on *United States v. Berroa*, 856 F.3d 141 (1st Cir. 2017), in which the appellate court reviewed the legal sufficiency of mail fraud convictions of individuals who had obtained their medical licenses through falsified board exam results and then used those fraudulently obtained licenses to practice medicine for profit. (ECF No. 67 at 2–8). The *Berroa* court held that although the defendants' financial gain could not have been acquired without the fraudulently obtained licenses, the gains were not acquired "by means of" the fraud within the meaning of the mail fraud statute. *Berroa*, 856 F.3d at 149–54. In reaching this conclusion, the court noted that the mail fraud statute required not only but-for causation, but also that the fraud be "the mechanism naturally inducing [the victim] to part with money." *Id.* at 149. The court concluded that the defendants' fraud "in obtaining their medical licenses [could] not be said to have 'naturally induced' healthcare consumers to part with their money years later." *Id.* at 150 (internal quotations omitted).

Based on *Berroa*, Defendant argues that the fraud alleged in the Indictment cannot be said to have "naturally induced" healthcare providers to hire the fraudulently licensed co-conspirators, so that the wire fraud charges cannot stand. (ECF No. 67 at 5). *Berroa*, however, is factually and legally distinguishable. First, *Berroa* was decided post-conviction, not at the motion to dismiss stage as here. Moreover, as the Government points out, "[f]ive courts of appeals . . . have concluded that

6

the wire fraud statute does not 'require convergence between the parties intended to be deceived and those whose property is sought in a fraudulent scheme.'" *United States v. Weigand*, 482 F. Supp. 3d 224, 237 (S.D.N.Y. 2020), *as corrected* (Sept. 2, 2020) (quoting *United States v. Greenberg*, 835 F.3d 295, 306–07 (2d Cir. 2016)).

*Berroa* is also substantively inapposite. The *Berroa* court, analyzing the mail fraud statute much the same way as the Supreme Court had analyzed the bank fraud statute, noted that "'by means of' is 'best read' to include only those frauds in which the false statement will reach a bank, either directly or indirectly." *Berroa*, 856 F.3d at 154 (quoting *Loughrin v. United States*, 573 U.S. 351, 365 n.8 (2014)). In *Berroa*, the charged mail fraud failed because it was "missing (except in a 'but-for' sense) . . . any connection between the 'means' and the 'end' that amounted to 'something more than oblique, indirect, and incidental.'" *United States v. Cadden*, No. 14-CR-10363-RGS, 2017 WL 2695289, at *2 (D. Mass. June 22, 2017), *aff'd*, 965 F.3d 1 (1st Cir. 2020) (quoting *Berroa*, 856 F.3d at 149). But proximate causation has been sufficiently alleged in the instant Indictment. Here, Defendants are accused of, among other things: "(a) soliciting and recruiting co-conspirators . . . seeking nursing credentials to obtain employment as an LPN/VN in the health care field; (b) creating and distributing via interstate wire communications, . . . fraudulent diplomas and transcripts for co-conspirators seeking LPN/VN licensure and employment in the health care field; (c) using the false and fraudulent documents to obtain employment, pay, and other benefits in the health care field; and (d) concealing the use of fraudulent documents used to obtain employment in the healthcare field." (ECF No. 1 at 6). The Indictment alleges that Defendants conspired to create and distribute transcripts and diplomas that were intended to reach and be relied upon by the victims of the fraud – employers – when making a hiring decision. In contrast, the patients in *Berroa* cannot be said to have been induced to part with their money years later based on the fraudulent test scores.

Lastly, "[a] person who is involved in a conspiracy . . . is responsible for any later act of a co-conspirator which was a necessary or natural consequence of the conspiracy." *United States v. Schlei*, 122 F.3d 944, 968 (11th Cir. 1997).[3] Here, Defendants' alleged actions were necessary to achieve the ultimate goal of the stated conspiracy to defraud the health care providers of their money. Accordingly, the undersigned finds that the Indictment has alleged a sufficient causal connection between Defendants' alleged actions and the alleged victims' property loss to survive a motion to dismiss.

### C. The Health Care Providers did not Receive the Benefit of their Bargain

Lastly, Defendants argue that the Indictment should be dismissed because the health care providers received the full economic benefit of their bargain, so that there is no resulting money or property loss. (ECF No. 82 at 8–9) (citing *United States v. Takhalov*, 827 F.3d 1307 (11th Cir. 2016)). Although the Government does not challenge the adequacy of the services rendered by the co-conspirators, it argues that Defendants mischaracterize *Takhalov*. (ECF No. 86 at 12). According to the Government, *Takhalov* stands for the proposition that the requisite harm happens when the misrepresentation affects the victim's understanding of the nature or value of the bargain. *Id*; *see United States v. Waters*, 937 F.3d 1344, 1353–54 (11th Cir. 2019). In this regard, the Government asserts that the health care providers did not, in fact, receive the benefit of the bargain in that they bargained for properly trained and licensed nurses. (ECF No. 86 at 12). It follows then that the co-conspirators' misrepresentations were integral to their being hired and to inducing the health care providers to pay salaries and benefits based on the false credentials Defendants provided. *Id.* at 13.

---

[3] Defendant additionally argues that the recent decision in *Ciminelli v. United States*, 598 U.S. 306 (2023), supports his arguments. *See generally* (ECF No. 72). But the Government has not alleged a "right to control" theory in this case, as was at issue in *Ciminelli*. Indeed, *Ciminelli* reaffirmed that "the wire fraud statute reaches only traditional property interests." *Id.* As such traditional money interests are what is alleged in the Indictment, *Ciminelli* does not help Defendants on this issue.

The undersigned agrees with the Government's reasoning. Simply put, the *Takhalov* court found that when a "misrepresentation goes to the value of the bargain," a wire fraud charge can stand. 827 F.3d at 1313. That is what we have here. A properly trained and duly licensed nurse is certainly more valuable than a nurse whose scholastic credentials are bogus and whose license was obtained through deception. Moreover, case law is clear that when a contract is induced by false pretenses, and payments are made for services under that contract, that suffices to constitute a deprivation of money or property under the federal fraud statutes. *See United States v. Greenberg*, 835 F.3d 295, 306 (2d Cir. 2016); *United States v. Seidling*, 737 F.3d 1155, 1161 (7th Cir. 2013); *United States v. McMillan*, 600 F.3d 434, 450 (5th Cir. 2010); *United States v. Christopher*, 142 F.3d 46, 54 (1st Cir. 1998); *United States v. Blumeyer*, 114 F.3d 758, 768 (8th Cir. 1997); *United States v. Cosentino*, 869 F.2d 301, 307 (7th Cir.1989). Although not binding, such a confluence of opinion from other circuits is persuasive.

In sum, the undersigned finds that the Indictment has alleged all essential elements of a wire fraud offense and a sufficient causal connection between Defendant's alleged actions and the victims' alleged property loss to survive a motion to dismiss. Moreover, the Indictment notifies Defendant of the charges against him and would allow Defendant to rely upon a judgment under the Indictment as a bar against double jeopardy for any subsequent prosecution for the same offense. *Chalker*, 966 F.3d at 1190. The Motion should therefore be denied.

### IV.  RECOMMENDATION

For the foregoing reasons, the undersigned **RECOMMENDS** that: (i) Defendant's Motion to Dismiss (ECF No. 58) be **DENIED**; and (ii) Defendant's Request for a Hearing (ECF No. 103) be **DENIED AS MOOT**.

Within **seven days** after being served with a copy of this Report and Recommendation, any party may serve and file written objections to any of the above findings and recommendations as

provided by the Local Rules for this District. 28 U.S.C. § 636(b)(1); S.D. Fla. Mag. R. 4(b). Failure to timely object waives the right to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions contained in this Report and Recommendation. 11th Cir. R. 3–1 (2022); *see Thomas v. Arn*, 474 U.S. 140 (1985).

**DONE AND ORDERED** at Chambers in Fort Lauderdale, Florida, this 11th day of September 2023.

ALICIA O. VALLE
UNITED STATES MAGISTRATE JUDGE

cc: U.S. District Judge Rodney Smith
All Counsel of Record